E-FILED
Tuesday, 03 March, 2015 10:51:20 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MOHAMED KAROUMIA,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    Defendant. | Case No. 4:13CV04098-JEH |

## Order and Opinion

      The Plaintiff appeals from the denial of his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act 42 USC § 405(g). The Plaintiff filed his application for disability insurance benefits on December 7, 2010, alleging that he became disabled on March 12, 2010. In a Notice of Disapproved Claim dated March 11, 2011, the Plaintiff's claim was denied. On April 11, 2011, he asked for a reconsideration of his claim. That request was denied on May 18, 2011. On June 13, 2011, he filed a Request for Hearing by an Administrative Law Judge. The hearing was held on July 18, 2012, before Administrative Law Judge (ALJ) Barbara J. Welsch. The Plaintiff was present and was represented by counsel. The Plaintiff, with the aid of an interpreter, testified at the hearing, along with Al Walker, a vocational expert. ALJ Welsch issued an unfavorable decision dated August 6, 2012. On August 30, 2012, the Plaintiff filed a request for Review of Hearing Decision with the Appeals Council. In a Notice of Appeals Council Action dated September 27, 2013, the Appeals Council denied his request for review. Having exhausted his administrative remedies, the Plaintiff timely filed his complaint in this action on

November 7, 2013, pursuant to 42 U.S.C. §405(g). The parties consented to a U.S. Magistrate Judge deciding the merits of this case.

Now before the Court are the Plaintiff's, Mohamed Karoumia's, Motion for Summary Judgment and the Commissioner of Social Security's, Carolyn W. Colvin's, Motion for Summary Affirmance. The Motions are fully briefed, and for the reasons stated herein, the Court GRANTS the Commissioner's Motion for Summary Affirmance and DENIES the Plaintiff's Motion for Summary Judgment.

# I
## A

The Plaintiff alleged disability due to limitations caused by back problems resulting from a car accident in April of 2008. He first sought medical treatment for this condition in April of 2009, when he went to the Community Health Care clinic and was seen by Dr. Foluso Ogunleye. After conducting a CT scan which revealed a possible mild compression fracture and a moderate sized disc bulge with some mild to moderate central canal narrowing, Dr. Ogunleye referred the Plaintiff to neurosurgeon, Dr. Daniel Fassett, for evaluation.

Dr. Fassett examined the Plaintiff approximately a month later and diagnosed the Plaintiff with a facture at the L3 endplate. He initially prescribed physical therapy. In September 2009, around four months after that visit, the Plaintiff returned to Dr. Ogunleye, complaining of intractable pain and requesting referral to a pain clinic. Although the Plaintiff complained of pain at an 8/10 level, the examination at that visit showed no abnormalities with the exception of "straight leg rising" and "tenderness to palpitation of the spine." Dr. Ognuleye prescribed medication and referred the Plaintiff back to Dr. Fassett. Eventually, on March 12, 2010, the Plaintiff underwent surgery involving a right L5-S1 hemilaminectomy, medial facetectomy, discectomy and decompression of

S1 nerve root. The Plaintiff tolerated the procedure well and reported no leg pain after the surgery.

After surgery, the Plaintiff underwent physical therapy from April 2010 through July 2010. When he first arrived for that therapy in April, he was noted to require minimal assistance with daily activities, had full strength in the lower extremities, and made no mention of an inability to walk unassisted. The Plaintiff progressed through therapy through July of 2010, showing steady signs of improvement and toleration of his treatment/therapy with minimal complaints of pain and difficulty.  However, in mid-July, he missed four out of five of his appointments, reporting on August 10, 2010 that he had been very sore for the preceding three weeks and had not been performing his home exercises as directed by his therapist.  Nevertheless, the therapist noted that he tolerated his therapy that day with mild complaints of pain and difficulty, although he also needed reeducation on the importance of his home exercise program and being consistent with his therapy treatments.

At the time of his August 19, 2010 appointment, the therapist noted:

> Client was positive for superficial tenderness over wide area of lumbar skin in no localized to one structured[sic]. Was positive form[sic] axial loading and acetabular rotation. Double straight leg raise was less then single at 5 degrees. Client also continues to demonstrate disproportionate verbalization and facial expression. Client was 4 out of 5 for Waddels' Signs: Tenderness, simulation test, distraction test, overreaction.

(D. 12-3 at ECF p. 68). The therapist discharged the Plaintiff, noting that his "subjective complaints of increased pain and objectively his trunk mobility has decreased compared to his initial evaluation. He demonstrated 4 out of 5 Waddells signs which indicated a poor prognosis for therapy at this time." (D. 12-3 at ECF p. 70).

3

Several months later, in May and June of 2011, Dr. Robert Milas, another neurosurgeon, evaluated the Plaintiff. Dr. Mila's impression was one of lumbar radiculopathy. He ordered an MRI, which showed moderate bulging and protruding disc at the L2-3 level. He recommended that the Plaintiff return to his original neurosurgeon, Dr. Fassett, to see if he was a surgical candidate.

In June of 2011, the Plaintiff was seen in Dr. Fassett's office by nurse practitioner, Jana Reed. The Plaintiff complained of chronic back pain and bilateral leg pain for several months, numbness and tingling with some swelling in his feet, and no activities except for physical therapy. The May 2011 MRI showed moderate bulging and protruding disc at L2-3 with mild to moderate narrowing of the spinal canal and some mild degenerative disease, but at the L5-S1 level there was very mild central bulging of the discs without significant narrowing of the spinal canal. He was offered epidural steroid injection (which he refused), pain management, and physical therapy. Ms. Reed noted that the Plaintiff's pain symptoms did not correlate with the MRI as he was not experiencing any thigh or groin pain. She then directed him to return after a few months of physical therapy, noting that such therapy would help his pain issues.

Nearly a year later, the medical record shows a visit by the Plaintiff to Dr. Sanjay Pancholi, where the Patient Plan notes the Plaintiff was there for a regular visit, he having herniated disc bulge and L4-L5 disc bulge. He noted, "Normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. No thoracic spine tenderness, Normal mobility and curvature. Comments: tender to palpation paraspinal muscles, + spasms." ([D. 12-3 at ECF p. 127](#)). The plan for the Plaintiff was for him to take Tylenol #3, Neurontin, and Flexeril, as well as come to a follow-up visit in six months.

At the July 18, 2012 hearing before the ALJ, the Plaintiff testified that he lived at home with his wife and three children. He stated that his consistent high

4

pain levels in his back and legs, which he was "not able to really control" with medication, prevented him from working. (D. 12 at ECF p. 40). He did, however, testify that he tries to walk for 30 minutes a day, used the computer, reads, drives, grocery shops, and takes care of his personal hygiene. He also travelled to Canada a month before the hearing, riding in the car for 18 to 20 hours while a friend drove. When he does perform daily activities, he lays down after them, sometimes three, four, five times a day for 15 to 45 minutes each time. Likewise, he testified that he must lay down after 35 minutes of walking or 15 minutes of standing in place. As for sitting, he stated that he must get up after 30 to 45 minutes to relieve pain.

He also testified that he was able to do everything himself before his accident and surgery, but, afterwards, he was not able to really help much and his wife was "pretty much doing most of it." He also testified that he used a cane at home but did not use it outside the home because it embarrassed him. He said he had trouble with the two steps into his house, walking on uneven surfaces, and walking on a straight path.

### B

In the ALJ's decision, she concluded that the Plaintiff had the following severe impairments: "Spine impairment including some bulging discs and degenerative disc disease of the lumbar spine with history of laminectomy and discectomy with residual back and leg pain." (D. 12 at ECF p. 20). After concluding that these impairments did not meet or equal any Listing, she then concluded the Plaintiff had the following RFC:

> The claimant has not demonstrated that he lacks the residual functional capacity to perform light and sedentary work as defined in 20 CFR 404.1567(a) (h); this limitation is because of all his impairments and symptoms combined (all back/leg symptoms) and means that he can perform all the requirements of light and

> sedentary work as defined by the regulations (sitting, standing, walking, lifting, etc.), except because of possible back/leg pain exacerbation with greater exertion, he should not perform repetitive bending or stooping, no prolonged walking (more than 30 minutes at a time), no climbing of ladders, ropes or scaffolds or work at unprotected heights (the last limitations also account for his subjective statements that he has dizziness and drowsiness caused by his medications). The claimant has not presented credible evidence that he has greater or different work related limitations.

(D. 12 at ECF p. 23). Then, after concluding that the Plaintiff is unable to perform any past relevant work given this RFC, she nevertheless concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

In making the RFC determination, the ALJ discussed the Plaintiff's testimony regarding his daily activities and, after doing so, made the following statement:

> While daily activities do not demonstrated[sic] the claimant is able to sustain full-time work, they do demonstrated[sic] that during an eight hour period, he sits, stands, walks, drives, lifts light items, reads, and goes out in public; and he has not demonstrated he would be unable to perform and sustain such activity in a fulltime job.

(D. 12 at ECF p. 23). She then immediately discussed the medical evidence in the record, as already discussed, *supra*.

In light of all this evidence, the ALJ concluded that the Plaintiff's "allegations of disabling pain are not found to be credible." Id. In doing so, she specifically noted: the physical therapist's observation that the Plaintiff's pain behaviors were inconsistent with the objective medical records; the Plaintiff was not fully compliant with treatment; the nurse practitioner noted the Plaintiff's pain symptoms were out of proportion to the MRI findings; the Plaintiff did not

6

seek medical treatment for periods of time, such as almost an entire year between June 2010 until May 2011; no evidence of therapy, pain management, or follow-up appointments after these things were recommended at his June 2011 appointment; and finally, no treatment records from June of 2011 until May of 2012, at which time there were no findings other than L4-L5 disc bulge and a recommendation to follow-up in six months.

## II

The Plaintiff challenges the ALJ's credibility determination as it relates to him when determining his RFC. Specifically, he argues that the ALJ failed to make a formal finding on the issue in light of her findings of severe impairments, that the objective medical evidence can reasonably lead to the Plaintiff's allegations of pain and limitations, that the ALJ's findings that the Plaintiff's daily activities indicate an ability to do full-time work is unsupported by the record, and that because the Plaintiff's allegations have substantial support in the medical record, his testimony cannot be discounted a credible. The Commissioner disagrees.

## III
### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. See *Schmidt v Apfel*, 201 F3d 970, 972 (7th Cir 2000); *Pugh v Bowen*, 870 F2d 1271 (7th Cir 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 USC § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v Barnhart*, 297 F3d 589, 593 (7th Cir 2002). The Court's function is to determine whether the

ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v Bowen*, 782 F2d 79, 82 (7th Cir 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v Perales*, 402 US 389, 390 (1971); *Henderson v Apfel*, 179 F3d 507, 512 (7th Cir 1999). Furthermore, determinations of credibility made by the ALJ will not be overturned unless the findings are clearly erroneous. *Anderson v Bessemer City*, 470 US 564, 573 (1985); *Imani v Heckler*, 797 F2d 508 (7th Cir 1986), cert denied, 479 US 988 580 (1986).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. See 20 CFR " 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 USC ' 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v Califano*, 614 F2d 142, 143 (7th Cir 1980). The factual determination is made by using a five-step test. See 20 CFR " 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix[1] and which meets the duration requirement;

4) is unable to perform her past relevant work; and

5) is unable to perform any other work existing in significant numbers <u>in the national economy.</u>

Id. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v Schweiker*, 732 F2d 605 (7th Cir 1984). The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v Heckler*, 779 F2d 1250 (7th Cir 1985); *Halvorsen v Heckler*, 743 F2d 1221 (7th Cir 1984).

As in this case, the credibility of the claimant is oftentimes central to the RFC determination. Reviewing courts afford an ALJ's credibility finding "considerable deference" and overturn it only if "patently wrong." *Prochaska v Barnhart,* 454 F3d 731, 738 (7th Cir 2006). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed." *Sims v Barnhart,* 442 F3d 536, 538 (7th Cir 2006) (citation omitted). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons

---

[1] Should the claimant not qualify under one of Step Three's listed impairments, the ALJ then proceeds to Step Four to determine the claimant's Residual Functional Capacity. Pursuant to the claimant's RFC, the ALJ determines under Steps Four and Five whether she is capable of performing past work or other work available in the national economy. 20 CFR § 404.1520(e)-(g).

9

for the finding on credibility, supported by the evidence in the case record." An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, "functional limitations," and treatment (including medication). *Scheck v Barnhart*, 357 F3d 697, 703 (7th Cir 2004); *Rice v Barnhart*, 384 F3d 363, 371 (7th Cir 2004).

B

The Plaintiff initially argues that because the ALJ found severe impairments at Step Two of the sequential evaluation process, "it is logically necessary that the objective medical evidence supports medically determinable back and leg pain that significantly limits [Plaintiff's] ability to perform work-related functions." (D. 14-1 at ECF p. 19). The Plaintiff, however, misunderstands the effect of a finding of a severe impairment at Step Two.

At Step-Two of the sequential process, the ALJ determines whether the claimant suffers from an impairment that is severe or whether a combination of his impairments is severe. In the present case, the ALJ determined that the Plaintiff had the following severe impairments: "Spine impairment including some bulging discs and degenerative disc disease of the lumbar spine with history of laminectomy and discectomy with residual back and leg pain." (D. 12 at ECF p. 20). The Plaintiff argues that this finding necessarily entails a finding that the Plaintiff cannot work; it does not.

As the Commissioner notes, the finding of at least one severe impairment is a threshold determination which, when found, allows the sequential process to proceed to the next steps. See *Curvin v Colvin*, ___ F3d ___ (7th), 2015 WL 542847; *Castile v Astrue*, 617 F3d 923, 927 (7th Cir 2010). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." Id at 927, citing 20 CFR §§

404.1520(c). A finding of a "sever impairment", however, does not equate to a finding of disability as the Plaintiff suggests. Only if the severe impairment meets or equals one of the Listings (Step-Three of the sequential process) is a claimant conclusively presumed to be disabled—a claim the Plaintiff does not make here. Otherwise, the process proceeds to Step Four, where the ALJ determines whether the impairments as found prevent the claimant from performing work he has performed in the past and, if not, to Step Five where the ALJ determines whether he is able to perform other work in the national economy. *Bowen v Yuckert*, 482 US 137, 141-42 (1987).

The Claimant's argument conflates Step Two and Step Four of the process, essentially arguing that a finding of "severe impairment" logically entails a finding of disability. The extent to which a severe impairment limits a claimant's ability to work, however, is precisely the question asked at Step Four. If the Court were to accept the Plaintiff's argument, then every disability claim where a severe impairment was found to exist would stop at Step Two. That is not how the process works.

Nor does the ALJ's finding of a severe impairment entail a finding that the ALJ finds the claimant fully credible. As the Seventh Circuit recently noted, SSR 96-7p "does not require an ALJ in every case to make a credibility determination at or before Step Two." *Curvin,* at *1. In this case, as in *Curvin*, the ALJ "made as favorable a determination as can be made at Step 2—that [Plaintiff] met the threshold by having a severe impairment—on the basis of the objective medical evidence, so an evaluation of [Plaintiff's] symptoms and the requisite credibility determination were not necessary at that step." Id. In other words, simply because the ALJ concludes that evidence exists in the medical record to conclude that a severe impairment is present does not mean that she must fully credit the Plaintiff's claims regarding the extent to which the severe impairments limit his

functional capacity. Indeed, that question is the central focus of this case—*ie*, are the Plaintiff's claims of the extent and nature of his limitations given his severe impairment credible in light of the medical evidence in the record. That is a question for Step Four of the process. To the extent that the Plaintiff argues that the ALJ made no finding as to the extent the Plaintiff's symptoms are consistent with the medical evidence, that is precisely the finding that the ALJ made when determining his RFC at Step Four—a determination to which this Court now turns.

C

The Plaintiff next seizes on one sentence by the ALJ regarding the Plaintiff's daily activities. The ALJ made the following statement regarding the Plaintiff's daily activities:

> While daily activities do not demonstrated[sic] the claimant is able to sustain full-time work, they do demonstrate[sic] that during an eight hour period, he sits, stands, walks, drives, lifts light items, reads, and goes out in public; and he has not demonstrated he would be unable to perform and sustain such activity in a full-time job.

(D. 12 at ECF p. 23). The Plaintiff argues that this statement by the ALJ amounts to a conclusion by the ALJ that the Plaintiff's daily activities "do not indicate an ability to do full-time work," which he seems to suggest equates to a *per se* finding of disability. (D. 12 at ECF p. 27).

Although the ALJ's statement is confusing, made only more so by the typographical errors, the context of the statement in light of the decision as a whole is clear and contrary to the Plaintiff's interpretation. The Court understands the ALJ to be saying in the first part of the statement that, considering the Plaintiff's testimony in isolation, that testimony by itself does not establish that he is capable of sustaining full time work. On the other hand, in the

second half of the statement, the Court understands the ALJ as saying that the Plaintiff's daily activities also do not establish by themselves that the Plaintiff *cannot* sustain full time work. In other words, the Plaintiff's testimony regarding his daily activities is not dispositive on the question of disability and, hence, the ALJ looked to the medical evidence in the record—something the ALJ did in the paragraph immediately following the statement at issue. In other words, the Plaintiff's claimed daily activities are not dispositive on the question of his ability to work, one way or the other and, accordingly, must be examined in light of the medical evidence in the record and his own credibility. It was no error for the ALJ to do so.

**D**

The heart of the Plaintiff's argument is that the ALJ's determination of the Plaintiff's credibility is "flawed," and consequently, her RFC determination is not supported by substantial evidence. (D. 14-1 at ECF p. 14). However, as already noted, this court cannot overturn an ALJ's credibility determination unless it is "patently wrong," and no such finding can be made in this case. *Prochaska,* 454 F3d at 738. The ALJ determined the credibility of the Plaintiff's statements in light of the entire case record, gave specific reasons for the finding on credibility which were supported by the evidence in the case record, and considered "elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, functional limitations, and treatment (including medication)." *Scheck,* 357 F3d at 703; *Rice,* 384 F3d at 371. See also SSR 96–7p.

Specifically, in finding the Plaintiff's claims of disabling pain not to be credible, the ALJ noted several specific facts which undermined his credibility. These included the statement by his physical therapist that he exhibited disproportionate pain behaviors and that he was not fully compliant with

13

treatment. The nurse practitioner likewise noted that the Plaintiff's pain symptoms were out of proportion to the findings in his MRI. The Plaintiff also went for long periods without treatment despite his allegations of ongoing pain and limitations. For example, as the ALJ noted, he went from June 2010 until May 2011 without treatment, did not follow up on the recommendations for therapy and pain management made at his June 2011 appointment, and he had no additional treatment from June 2011 until May 2012, at which time the treating physician noted only an L4-L5 disc bulge with a recommendation to follow-up again in six months. These are all very good reasons for doubting the Plaintiff's claims regarding the degree of his pain and the extent of his limitations, and they are reasons which the ALJ specifically cited.

Regarding his daily activities, the ALJ noted that the Plaintiff testified that during an eight hour period, he sits, stands, walks, drives, lifts light items, reads, and goes out in public. Likewise, only a month before the hearing with the ALJ, he spent between 18 and 20 hours in a car on a trip to Canada, notwithstanding the fact that he also testified he had to get up every 30 to 45 minutes from a sitting position to relieve pain. All of these facts properly reflected on the credibility of the Plaintiff's statements regarding the degree of his pain and the extent of his limitations.

Regarding medical evidence and opinions, with only minor variations, the objective medical evidence and the medical opinions in the record are consistent, which is the obvious reason why the ALJ did not conduct any detailed weighing of the opinions, with the exception of her rejection of the state agency physician's conclusions that the Plaintiff needed an assistive device for ambulation—a rejection which was entirely correct given the lack of such evidence in the medical records from the Plaintiff's treating physicians. Accordingly, the only evidence which supported the degree of pain and limitation as alleged by the

14

Plaintiff was his own testimony, and the ALJ correctly evaluated that testimony in light of all the evidence in the record.

This is not a case where the ALJ erred by discounting pain testimony that can't be attributed to "objective" injuries or illness. See for example *Hall v. Colvin*, ___ F3d ___ (7th Cir), 2015 WL 727962; *Adaire v Colvin,* ___ F3d ___ (7th Cir), 2015 WL 678795. As SSR 96-7p(4) notes, "[A]n individual's statements about the intensity and persistence of pain or other symptoms or about the effects the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The ALJ here did not find that the Plaintiff was *without* pain or limitation, nor did she require him to provide objective medical evidence to substantiate the degree of his pain or limitations. Rather, she evaluated the Plaintiff's claims *in light of* the other evidence in the record which, as noted, provided a basis for doubting the Plaintiff's testimony. While the ALJ cannot require objective medical evidence to prove the degree of pain or limitation, the ALJ is also not required to simply accept at face value the Plaintiff's claims either. She must instead evaluate the Plaintiff's credibility on the issue according to the factors set forth in SSR 96–7p, which she did.

Given that the ALJ determined the credibility of the Plaintiff's statements in light of the entire case record while giving specific reasons for the finding on credibility which were supported by the evidence, this Court cannot disturb that credibility finding as "patently wrong."

## IV

For the reasons set forth, *supra*, this Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Judgment, thereby AFFIRMING the decision of the Commissioner.

Any appeal of this Order, in light of the parties' consent to the U.S. Magistrate Judge, must be taken directly to the United States Court of Appeals for the Seventh Circuit.

So Ordered.

March 3, 2015

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE